IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| THOMAS OWEN EVANS, IV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 5:11cv049 |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By:  Michael F. Urbanski |
| Commissioner of Social Security, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

This social security disability appeal is before the court for review of the Report and Recommendation issued in this case by the magistrate judge on May 18, 2012, in which it is recommended that this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.  The Commissioner has filed an objection to the Report and Recommendation pursuant to Federal Rule of Civil Procedure 72(b).  For the reasons set forth below, the court finds the Commissioner's objection to the Report and Recommendation to be well-taken.  As such, the recommendation that this case be remanded to the Commissioner will be rejected and the Commissioner's decision will be affirmed.

I.

Plaintiff Thomas O. Evans, IV, was 37 years old as of his alleged onset date of June 30, 2005.  He has a master's degree and spent two years studying in a doctoral program in English. He previously worked as an adjunct faculty member at James Madison University.  Evans filed applications under both Title II and Title XVI of the Social Security Act alleging disability as a result of his bipolar disorder.  He appeared before an administrative law judge ("ALJ") at a

hearing held on June 7, 2010.  The ALJ determined that Evans' affective disorder, hernias and hypothyroidism were all severe impairments.  In an exhaustive opinion, the ALJ discussed Evans' treatment history with his psychiatrist, Dr. Eagle, and his primary care physician, Dr. Yoder.  The ALJ found that Evans has the residual functional capacity ("RFC") to perform light work with moderate limitations in his ability to understand, remember and complete detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and accept instructions and respond appropriately to criticism from supervisors, so that supervisory correction should be constructive and non-confrontative.  The ALJ further stated that Evans "may have difficulty recalling long or complex directions but could concentrate for two-hour periods but would benefit from short breaks throughout the day in order to re-focus his attention, and would work best in an uncrowded environment to avoid being distracted by others."  (R. 26.) Given this RFC assessment, the ALJ determined that Evans could not perform his past relevant work as a JMU instructor.  Relying on testimony from a vocational expert, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Evans can perform.  Therefore, the ALJ concluded that Evans was not disabled under the Act.

Evans submitted to the Appeals Council a letter dated September 1, 2010, which was written by Dr. Eagle to Evans' former attorney.[1]  In this letter, Dr. Eagle discussed the ALJ's determination that Evans is not disabled.  Dr. Eagle acknowledged the ALJ's "quite lengthy and very complete" recitation of Evans' medical history and stated:

---

[1] New counsel was substituted after Evans' attorney passed away.

> In terms of commentary, it is clear that the patient does have a Bipolar I Disorder. It has taken some time to ultimately convince him of this and to obtain his cooperation in taking necessary medication, i.e. lithium carbonate. There are other medications that can also be used but he is currently under treatment with lithium carbonate. He has, in terms of history provided to me, had difficulty in maintaining many attempts at employment, and in my knowledge of him and understanding of his condition, it is my opinion that, though he has very high intellectual capacity, he has a distinct inability to apply that in many aspects of commonsense usage, and for that matter, has had difficulty in managing any number of work situations. Additional information has occurred here recently, with relevance to his ability to function in an academic capacity. The patient was able to obtain a position with a local college teaching several classes. At the time that he was to start the teaching of the classes, he had a psychological distintegration, i.e. a "psychological meltdown", and simply could not show up for his teaching assignment. After consideration of this in contact with him and also with information provided by his mother, I did write an explanation to the community college regarding this bipolar disorder and his inability to function sufficiently to carry forth with the academic duties.
>
> Whether Mr. Evans can manage light work with limited work requirements on an ongoing basis is still, I feel, a significant question. Given his intellectual capacity and his academic knowledge, one would consider that he would be able to pursue both further academic education and also academic endeavor, but the most recent happening seems even to preclude that. . . .
>
> Regardless of the conclusion regarding his disability under Social Security Act, I do intend treating him for his bipolar condition, and will, of course, encourage him in any effort toward gainful employment. In any case, his history does tend to suggest against success in that. I still maintain that the best possible pursuit for him would be in the academic realm, although the recent incident does not support that well either.

(R. 510-11.) The Appeals Council considered this letter from Dr. Eagle but found that it did not provide a basis for changing the ALJ's decision. (R. 1-2.) The ALJ's decision then became the final decision of the Commissioner, and Evans filed the instant appeal.

This matter was referred to the magistrate judge for proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  The parties filed cross motions for summary judgment and supporting memoranda and the magistrate judge issued his Report and Recommendation on May 18, 2012.  In his Report and Recommendation, the magistrate judge concluded that the ALJ did not err by failing to giving controlling weight to the disability opinion of Evans' treating psychiatrist, Dr. Eagle, finding that "[a]lthough the plaintiff may disagree with the ALJ's non-disability determination, the record more than adequately demonstrates that it was reached only after weighing the relevant factors.  It is simply not the role of the court to re-weigh the conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner."  Report & Recommendation, Dkt. # 16, at 9-11.  No objection was filed to the magistrate judge's finding in this regard, and this portion of the Report and Recommendation will be adopted.

The magistrate judge went on to conclude, however, that Dr. Eagle's September 1, 2010 letter discussing the ALJ's decision in this case, which was submitted to the Appeal's Council for consideration, is new and material evidence that warrants remand under Wilkins v. Sec'y, Dep't of Health & Human Services, 953 F.2d 93 (4th Cir. 1991) (en banc).  The Commissioner objects to this portion of the Report and Recommendation.  Having reviewed this issue de novo[2] and read the relevant portions of the record, the court finds the Commissioner's decision to be supported by substantial evidence.  Therefore, the magistrate judge's recommendation to remand will be rejected and the Commissioner's decision affirmed.

---

[2] Pursuant to 28 U.S.C. § 636(b)(1), the "court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge."  Federal Rule of Civil Procedure 72(b) provides the parties with an opportunity to file written objections to the proposed findings and recommendations and provides that the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."

## II.

### A.

When deciding whether to grant review, the Appeals Council must consider evidence submitted to it "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins, 953 F.2d at 95-96. Evidence is new if it is not duplicative or cumulative. Id. at 96. Evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id. at 96. When the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner, Wilkins, 953 F.2d at 96, which then became subject to judicial review. 42 U.S.C. § 405(g). The Fourth Circuit requires that reviewing courts consider the record as a whole, including the new evidence, in order to determine whether the Commissioner's decision is supported by substantial evidence. See Wilkins, 953 F.2d at 96. The court must determine whether there is a "reasonable possibility" that the interim evidence submitted to the Appeals Council and considered by it would have changed the outcome. Id. at 96.

In this case, the magistrate judge held that the reference in Dr. Eagle's letter to Evans suffering a "psychological meltdown" before he was to begin a teaching job at a local community college constitutes new and material evidence that warrants remand. Specifically, the magistrate judge held that this evidence "offers additional insight into the plaintiff's quite significant non-exertional impairment," it "materially reinforces" Dr. Eagle's assessment of Evans' work-related limitations, and it "calls into doubt the ALJ's residual functional capacity determination," thus providing a cognizable basis for changing the ALJ's decision. Report & Recommendation, Dkt. # 16, at 13. The magistrate judge found that "the absence of any substantive comment or action by the Appeals Council after receipt of Dr. Eagle's letter makes

vacation of the Commissioner's final decision and remand both necessary and appropriate." Id.
The lack of "substantive comment" from the Appeals Council does not warrant remand,
however. As the magistrate judge acknowledges in his opinion, the Fourth Circuit held in Meyer
v. Astrue, 662 F.3d 700, 702 (4th Cir. 2011), that the Appeals Council "need not explain its
reasoning when denying review of an ALJ decision." Additionally, contrary to the magistrate
judge's finding, the Appeals Council was not obligated to take any action based on Dr. Eagle's
September 1, 2010 letter because this evidence is neither new nor material.

**B.**

The magistrate judge held in his Report and Recommendation that "[t]o the extent that
Dr. Eagle's letter is a reiteration of his assessment of the plaintiff's inability to perform non-
academic work-related activity, it is patently neither new nor material. Likewise, to the extent
that it simply reinforces the plaintiff's contentions, it is neither new nor material." Report &
Recommendation, Dkt. # 16, at 12. Indeed, a great deal of the "commentary" Dr. Eagle sets
forth in his September 2010 letter mirrors statements he made in earlier treatment notes and
letters, which were before the ALJ.

Dr. Eagle's records plainly document Evans' clinical diagnosis of bipolar I disorder. Dr.
Eagle began treating Evans back in 1999, at which time Evans had a "significant drug and
alcohol problem" and refused to take prescribed medications for fear they would cause weight
gain and stifle his creativity. (See R. 428.) His treatment with Dr. Eagle was sporadic at first
and there were significant gaps in treatment until mid-2008, when Evans began to be more
attentive to both medication and psychotherapy. (R. 430.) Evans started seeing Dr. Eagle on a
monthly basis in 2009. (See R. 440-41.) Once Evans stopped abusing drugs and alcohol and
began taking the lithium carbonate prescribed for his bipolar disorder, Dr. Eagle's records reflect

that Evans' symptoms improved and his condition became "significantly more stable;" his mood and cognition stabilized; his mood was reported to be "reasonably good;" his social and interactive abilities stabilized; he was less frantic and impulsive and less anxious.  (R. 428, 436, 461, 463, 474, 477, 482, 488.)  In a letter to disability services at George Washington University, where Evans was hoping to be re-admitted to the doctoral program as a disabled student, Dr. Eagle noted that Evans' prognosis was good so long as he continued with treatment and medication and abstained from drug and alcohol use.  (R. 476.)  These statements in Dr. Eagle's treatment records are congruent with the only other treatment notes found in the administrative record—those from Evans' primary care physician, Dr. Yoder.  Dr. Yoder's records consistently document Evans' reports that he was "generally getting along well" (R. 398; see also R. 403, 404, 405), was "feeling well" (R. 401), and that the lithium helped control his symptoms (R. 402) after he began taking it in 2008.

Dr. Eagle's records further document Evans' reports of difficulty finding and maintaining employment.  Evans taught eight courses at JMU as an adjunct faculty member from August 2007 through June 2008.  Records from JMU indicate that Evans was able to complete his job duties without special assistance and regularly reported to work as scheduled but that his work was not considered satisfactory when compared to other employees in a similar position. (R. 178-80.)  Dr. Eagle noted in May 2009 that Evans was released from his Ph.D. program and "has not been able to find employment in the interim."  (R. 428.)  He was still pursuing jobs as of June 2009.  (R. 474.)  Although he attempted work as a census surveyor, Evans "found that he was unable to perform this work."  (R. 428.)  In August 2009, Dr. Eagle again stated Evans was searching for employment but had not found anything and noted that Evans had attempted work

at a retail establishment but was unable to manage that.  (R. 436.)  Again in October 2009, Dr.

Eagle stated that Evans:

> has found extreme difficulty in finding employment.  He is not a
> particularly physical individual, and he found it difficult to
> consider jobs which required physical effort and physical ability.
> This included construction.  He has tried to obtain employment in
> retail trades, but has had difficulty with these because of lack of
> concentration, difficulty maintaining attention at work, difficulty in
> providing even the most marginal efforts in performing what
> would be fairly easy job responsibilities.

(R. 441.)  Evans reported ushering at ball games in November 2009 and working through guest

services at JMU in January 2010.  (R. 461.)

Dr. Eagle makes clear in his records that he feels that while Evans is extremely

intelligent, "his abilities to manage day to day and, common sense efforts, have been markedly

impaired.  This has interfered with his being able to find employment."  (R. 428.)  Dr. Eagle

takes note of Evans' tendency towards the abstract (R. 429) and his difficulties in concentration

and persistence (R. 436).  Dr. Eagle suggests that a return to academia would be the best option

for Evans because "his difficulties create major problems in gainful employment in other areas of

pursuit aside from the intellectual and academic."  (R. 430.)  But this suggestion appears to be

based on Evans' self-reported desire to do such work and inability to perform other types of

work.  Dr. Eagle noted in August 2009 that:

> [Evans] would like to complete his Ph.D. and be able to return to a
> teaching profession.  He really feels that he is not suited to any
> other form of work, partly because he is physically unable to
> sustain tasks which require much physical labor, and also he does
> have continued difficulty in managing both motivation and interest
> in terms of other positions such as retail work.
>
> At this time, [Evans] basically is not functional with regard to
> gainful employment.

(R. 437.)

The ALJ had the benefit of considering Dr. Eagle's opinions as regards Evans' ability to work, and in a comprehensive and exhaustive opinion found that Dr. Eagle's "opinions regarding the claimant's mental functional abilities and conclusions that the claimant is 'disabled' are opinions on an issue that is reserved to the Commissioner and in this case are not entitled to controlling weight or special significance." (R. 29.)  The ALJ found Dr. Eagle's opinions to be inconsistent with his treatment records, as well as Evans' ongoing work attempts and daily activities, and to be based on Evans' subjective reports of his inability to work.[3] (R. 29.)  The portion of Dr. Eagle's September 2010 letter that is a "reiteration of his assessment of the plaintiff's inability to perform non-academic work-related activity," Report & Recommendation, Dkt. # 16, at 12, is cumulative of the information contained in Dr. Eagle's treatment records. This evidence is, therefore, not new.

Additionally, while the fact that Evans suffered a "psychological meltdown" before beginning a teaching job at a community college might be considered new evidence, it is not material, as it does not provide a cognizable basis for changing the ALJ's decision in this case. The ALJ determined that Evans could not perform his past relevant work as a college instructor. The issue at step five,[4] therefore, is whether there are other jobs in the national economy that an individual with Evans' age, education, work experience and residual functional capacity can perform.  The fact that Evans could not show up for a teaching assignment at a community

---

[3] As noted supra, the magistrate judge found the ALJ's decision not to give controlling weight to Dr. Eagle's opinions to be supported by substantial evidence. Report & Recommendation, Dkt. # 16, at 9-11.  No objections to this portion of the Report and Recommendation were filed.

[4] The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  This inquiry asks whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work.  Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520).  If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

college does not indicate Evans is precluded from all gainful employment.  Nor does this fact

offer further insight into Evans' impairment, materially reinforce Dr. Eagle's assessment of

Evans' work-related limitations, or call into question the ALJ's RFC determination.[5]  See Report

& Recommendation, Dkt. # 16, at 13.  The Commissioner already determined that Evans'

impairments prevent him from working as a college instructor.

 In sum, while Dr. Eagle suggests academia would be the best possible pursuit for Evans

given his intellect and issues with "common sense efforts," the record does not indicate Evans

would be precluded from performing all non-academic related jobs.  The September 2010 letter

from Dr. Eagle does not provide a cognizable basis for changing the Commissioner's decision in

this case.  Evans' impairments might limit his ability to carry out academic job duties.  However,

he has not met his burden of proving that he is disabled from all gainful employment.

### III.

 Judicial review of disability cases is limited to determining whether substantial evidence

supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement

conditions.  See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  Evidence is substantial

when, considering the record as a whole, it might be deemed adequate to support a conclusion by

a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be

sufficient to refuse a directed verdict in a jury trial.  Smith v. Chater, 99 F.3d 635, 638 (4th Cir.

1996).  Substantial evidence is not a "large or considerable amount of evidence," Pierce v.

Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than

a preponderance.  Perales, 402 U.S. at 401.  If the Commissioner's decision is supported by

---

[5] It is worth noting that the document submitted to the Appeals Council for consideration is not a medical treatment note.  Rather, it is a letter to Evans' former attorney providing Dr. Eagle's commentary on the ALJ's decision in this case.

substantial evidence, it must be affirmed.  42 U.S.C. § 405(g); <u>Perales</u>, 402 U.S. at 401.  In this case, substantial evidence supports the Commissioner's decision.

Accordingly, the court cannot agree with the magistrate judge that remand is appropriate given this record.  As such, an Order will be entered rejecting the recommendation that this case be remanded and affirming the Commissioner's decision.

Entered:  September 14, 2012

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge